1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10

11   JUSTIN A., [1]                      Case No.:  3:22-cv-0714-JES-SBC
12                        Plaintiff,
                                          **ORDER ON MOTION FOR**
13   v.                                   **SUMMARY JUDGMENT AND**
                                          **REMANDING TO THE**
14   KILOLO KIJAKAZI, Commissioner of     **COMMISSIONER FOR FURTHER**
     Social Security,                     **ADMINISTRATIVE PROCEEDINGS**
15
                         Defendant.       **[ECF NO. 14]**
16
17

18        Justin A. ("Plaintiff") filed this action pursuant to Title 42 U.S.C. §§ 405(g) and

19   1383(c) seeking judicial review of the final administrative decision of the Commissioner

20   of the Social Security Administration ("Commissioner") regarding the denial of

21   Plaintiff's application for disability benefits and supplemental security income. ECF No.

22   5. The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and

23   denied Plaintiff's claim for benefits from May 20, 2017, through the date last insured,

24

25   ─────────────────

26   [1]  Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security
27   cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only
     their first name and last initial."
28

1

September 30, 2017. ECF No. 12 [Administrative Record ("AR")] at 24. Plaintiff filed a motion for summary judgment, the Commissioner filed a motion in opposition, and Plaintiff filed a reply. ECF Nos. 14, 19, 22.

After considering the parties' submissions, the administrative record, and the applicable law, for the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment **(**ECF No. 14**)**, **REVERSES** the Commissioner's decision, and **REMANDS** the matter to the Commissioner for further administrative action consistent with the findings presented herein.

## I.      PROCEDURAL BACKGROUND

On August 19, 2020[2], Plaintiff filed a Title II application for Social Security Disability Insurance, in which he alleged a disability beginning on May 20, 2017. AR at 162-163. The Commissioner denied Plaintiff's claim initially on October 26, 2020, and on reconsideration on January 29, 2021. AR at 76-79, 86-90. On March 30, 2021, Plaintiff filed a written request for a *de novo* hearing. *Id*. at 92-93. ALJ Randolph Schum presided over the hearing on July 14, 2021. *Id*. at 28-43. Plaintiff appeared at the hearing via telephone and was represented by his counsel, David Shore. *Id*. Plaintiff and Vocational Expert, Lynda Berkley, testified at the hearing. *Id*.

On August 3, 2021, the ALJ issued an unfavorable decision denying Plaintiff's request for disability benefits. AR at 13-24. On April 5, 2022, the Appeals Council denied Plaintiff's request for review. *Id*. at 1-5. On that date, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). Having exhausted all administrative remedies, Plaintiff brought this timely civil action, seeking judicial review pursuant to 42 U.S.C. section 405(g). *See* ECF No. 1.

---

[2] The ALJ's decision states that Plaintiff applied for Title II benefits on July 22, 2020. The Administrative Record, however, states Plaintiff applied for Title II benefits on August 19, 2020. The date discrepancies do not change the outcome of this decision.

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2017, the alleged onset date, through September 30, 2017, the date last insured. AR at 18. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) history of coronary artery disease; (2) umbilical hernia; (3) asthma; (4) neuropathy of the feet; and (5) obesity. *Id*. Plaintiff also had non-severe impairments of type II diabetes mellitus and hypertension. *Id*. The ALJ found the impairments as non-severe because ". . . they did not have more than a minimal effect on the claimant's ability to do basic work activities." *Id*. at 19. The ALJ proceeded to consider Plaintiff's impairments at step three of the sequential process.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the relevant section of the Commissioner's Listing of Impairments[3]. AR at 19. In support of this finding, the ALJ stated that "the record did not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet the criteria of any listed impairment." *Id*. Additionally, the ALJ stated that ". . . no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equaled a listed impairment (SSR 17-2p)." *Id*.

When a claimant's impairments, or combination of impairments, do not meet the criteria of a listed impairment, as was the case here, the ALJ next determines the claimant's residual functional capacity ("RFC"), *i.e.*, the ability to do physical and mental

---

[3] If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR §§ 404.1509 and 416.909), the claimant is deemed disabled. If it does not, the analysis proceeds to the next step.

work activities despite the claimant's impairments. AR at 23. Step four then considers whether the claimant is not disabled because he has the RFC to do past relevant work, and step five looks at the claimant's ability to do any other work considering his RFC, age, education, and work experience. *See id*.

The ALJ determined at step four that Plaintiff did not have any past relevant work through the date last insured because he had not worked a full-time job for six months or longer. AR at 23, 33. The ALJ concluded, however, that considering Plaintiff's age, education, work experience and RFC, ". . . there were jobs that existed in significant numbers in the national economy that the claimant could have performed through the date last insured." *Id.* at 23. The ALJ accepted the testimony of the vocational expert, who said Plaintiff could perform the requirements of Cashier II (D.O.T. 211.462-010), Sales Attendant (D.O.T. 299.677-010), and Retail Marker (D.O.T 209.587-034). *Id*. at 23-24.

In reaching his decision, the ALJ determined Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. sections 404.1567(b), with the following limitations:

> [Plaintiff can] lift and carry 20 pounds occasionally and ten pounds frequently; he could stand and walk for six hours of an eight-hour workday; he could sit for six hours of an eight-hour workday; he should never climb ladders, ropes, or scaffolds; he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and he should avoid concentrated exposure to temperature extremes of hot and cold, vibration, fumes, odors, dust, and gases, unprotected heights, and moving and dangerous machinery.

AR at 19.

The ALJ stated that the RFC assessment was based on ". . . all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." *Id*. at 20. The ALJ, therefore, concluded that Plaintiff was not disabled, as defined in the Social Security Act, from the alleged onset date of May 20, 2017, through the date last insured, September 30, 2017. *Id*. at 24.

### III.  DISPUTED ISSUES

The issues in dispute are: (1) whether the ALJ properly considered the limiting effects of Plaintiff's severe and non-severe impairments when determining Plaintiff's RFC, including Plaintiff's medical necessity for periodic leg elevation, mental impairments, obesity, and migraines; and (2) whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective statements. ECF No. 14 at 2. The Court addresses each issue in turn and construes Plaintiff's arguments as to each issue to the best of its abilities where Plaintiff's arguments are unclear.

### IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error. *Id*.; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (Under 20 C.F.R. section 404.1520(c), "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

"Substantial evidence means more than a mere scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

An ALJ's decision is reversed only if it "[i]s not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Id*. "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. "The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## V. DISCUSSION

### A.   Whether the ALJ Failed to Properly Consider Plaintiff's Impairments When Determining Plaintiff's Residual Functional Capacity

A claimant's RFC is determined by the ALJ and describes the plaintiff's capabilities despite the limitations resulting from his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC determination considers all medically determinable impairments, severe or not severe, and all relevant evidence on the record, including medical opinions from medical sources. *Id*. at §§ 404.1545(a)(2)-(3), 416.945(a)(2)-(3).

Here, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to address the limiting effects of Plaintiff's severe and non-severe impairments. ECF No.14 at 9. Specifically, Plaintiff argues that the ALJ erred by not considering his: 1) medical necessity for periodic leg elevation; 2) anxiety and depression; 3) obesity; and 4) migraines. *See* ECF No. 14 at 10-14. Defendant maintains that the ALJ properly determined Plaintiff's RFC because it includes all of Plaintiff's limitations that were supported by substantial evidence. *See* ECF No. 19 at 9-16. The Court examines the ALJ's evaluation of the disputed impairments below.

## 1. Plaintiff's Medical Necessity for Periodic Leg Elevation

Plaintiff claims his RFC is flawed because the ALJ erroneously found Plaintiff could sit, stand, and walk, for six hours a day despite Plaintiff's need for periodic leg elevation. In support of the argument, Plaintiff cites to Dr. Caesar Anderson's June 16, 2020[4] medical report that directed Plaintiff to elevate his legs for 15 to 20 minutes if standing or sitting for more than one to two hours. ECF No. 14 at 5. Defendant contends the ALJ properly considered all evidence during the relevant period[5], and the ALJ was not required to consider Dr. Anderson's report because it was after the date last insured. ECF No. 19 at 10-11.

As an initial matter, the Court will consider the entire medical record regarding Plaintiff's medical necessity for leg elevation, rather than limit its review to the records for the months of May 2017 to September 2017. It is well-settled that medical reports "containing observations made after the period of disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)). A medical report that post-dates a plaintiff's qualified period for insurance does not in itself render the report irrelevant. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

The Ninth Circuit has specifically held that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Id.*; *see also Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir.1984) (medical evidence of a condition subsequent to expiration of insured status is relevant because it may bear upon the severity of condition before expiration); *Poe v. Harris*, 644 F.2d 721, 723 n. 2 (8th Cir.1981) (evidence after the date last insured "is pertinent

---

[4] Although Plaintiff argues the relevance of the Dr. Anderson's 2020 medical report, the Court finds that Dr. Anderson's 2017 report, discussed below, is more relevant to determine Plaintiff's limitations during the relevant period.

[5] The relevant period refers to May 20, 2017, the alleged onset date, through September 30, 2017, the date last insured. *See* AR at 18.

evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date"); *Wooldridge v. Secretary of HHS*, 816 F.2d 157, 160 (4th Cir.1987) (medical evaluations made after expiration of insured status are not automatically barred from consideration and may be relevant to prove a previous disability); *Hartman v. Bowen*, 636 F. Supp. 129, 132 (N.D. Cal. 1986) (although disability must be established prior to the date last insured, plaintiff is "not confined ... to evidence in existence prior to that date").

Here, according to the medical records, Plaintiff was experiencing "numbness of the limbs chronic in feet," ulcers on his legs, and an "abnormal appearance" of the feet in September 2017. AR at 846-850. The ALJ also noted that Plaintiff was experiencing "decreased sensation," ulcers, and edema in the lower extremities in September 2017. *Id*. at 22. In October 2017, Plaintiff's primary care provider diagnosed Plaintiff with chronic cutaneous ulcer venous stasis, and referred him to a wound specialist, Dr. Caesar A. Anderson, due to chronic right lower extremity wounds. *Id*. at 914-919, 1191. In November 2017, Dr. Anderson diagnosed Plaintiff with chronic venous hypertension involving both legs and chronic ulcer of his right leg. *Id*. at 1194. Dr. Anderson "reinforced" Plaintiff's need to ". . . maintain legs in level position and to avoid them from dangling." *Id*. In April 2019, Plaintiff was told to continue leg elevation at a vein consultation, where he reported prolonged sitting and standing as aggravating factors. *Id*. at 519. Lastly, in June 2020, Dr. Anderson directed Plaintiff to ". . . AVOID prolong standing or sitting with legs dangling greater than 1-2 hours without elevation for minimum of 15-20 minutes PRIOR to returning to standing position." *Id*. at 943.

Since Plaintiff started experiencing symptoms in September 2017, the medical records from after the date last insured are relevant to determine whether Plaintiff had a pre-existing condition and limitations during the relevant period. Furthermore, the referral to a wound specialist along with the short timeline leading up to Dr. Anderson's directive indicate that Plaintiff likely had the condition during the relevant period. Although Dr. Anderson's 2017 directive did not provide Plaintiff with limitations specific

to the workplace, the Court finds the directive can reasonably be translated to severe limitations in such an environment. While ambiguous, Dr. Anderson's use of the words "maintain" and "avoid" indicates that Plaintiff was to elevate his feet as a default matter, rather than in specific instances. Additionally, Plaintiff testified that he was directed to keep his legs elevated "at all times" when awake. AR at 37. For this reason, the Court finds the post-dated medical records reasonably support a finding that Dr. Anderson's 2017 directive set forth severe limitation specific to Plaintiff's need to elevate his feet.

### a.    Duty to Conduct an Appropriate Inquiry

In *Tonapetyan v. Halter*, the court stated, "ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen*, 80 F.3d at 1288; *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998)). The ALJ may discharge this duty in several ways, including subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Smolen*, 80 F.3d at 1288; *Tonapetyan*, 242 F.3d at 1150 (9th Cir. 2001).

Here, the ALJ stated that ". . . neither Dr. Anderson's treatment notes nor any other medical records indicated that through the date last insured, the claimant was directed to elevate his legs to the extent to which he testified." AR at 22. On this point, the ALJ is correct that the record is devoid of such language. Concurrently, however, the medical records suggest that the condition requiring Plaintiff to elevate his legs started and worsened during the relevant period as Plaintiff's primary care provider noted symptoms and later referred Plaintiff to a specialist. Additionally, Dr. Anderson's ambiguous directive to Plaintiff shortly after the date last insured may have supported Plaintiff's statements had it been explained.

Accordingly, the Court finds that the ALJ's duty to conduct an appropriate inquiry was triggered. After reviewing the record and Plaintiff's statements, the extent of Plaintiff's limitations during the relevant period and the months following is ultimately unclear. The ambiguities would have likely been resolved had the ALJ asked: 1) Plaintiff's primary care provider about Plaintiff's limitations leading up to the referral to Dr. Anderson; and 2) Dr. Anderson for clarification on his directive to Plaintiff to ". . . maintain legs in level position and to avoid them from dangling." The Court believes this clarification is highly important as it could be outcome determinative to Plaintiff.

For example, at the ALJ hearing, the ALJ presented two hypotheticals for the vocational expert. AR at 39-40. The relevant part of the first hypothetical included an RFC of standing or walking for six hours out of eight and sitting for six hours. *Id*. at 40. When Plaintiff's counsel asked the vocational expert whether a person requiring periodic leg elevation would be capable of performing the stated jobs, the vocational expert stated "[w]ell, the problem would be that these are light jobs in hypothetical one, so most people are on their feet six out of hours a day, so they wouldn't have the opportunity to sit down somewhere and elevate their legs and clearly, they can't elevate their legs while they're standing, so preclude all light work based on the 20-minute need to raise your legs." *Id*. at 41.

The relevant part of the second hypothetical included an RFC of standing or walking for two out of eight hours and sitting for at least six hours. AR at 40. When Plaintiff's counsel again asked the vocational expert whether a person requiring periodic leg elevation would be capable of performing the stated jobs, the vocational expert answered that ". . . it would depend on the degree of elevation." *Id*. at 41-42. In sum, the vocational expert stated that a person would only be able to perform the jobs if they were able to elevate their legs to the degree necessary without having to leave the workstation. *See id*. at 42. The vocational expert's statements stress the importance of seeking clarification from both Plaintiff's primary care provider and Dr. Anderson because the ALJ found non-disability based on the assumption that Plaintiff could work as a cashier,

sales attendant, or retail marker, without considering Plaintiff's need to periodically elevate his legs. *See id*. at 16-24.

Given these circumstances, the record shows Plaintiff may have been more physically limited than what the ALJ determined in his RFC assessment. As such, the Court finds that the ALJ erred in his evaluation of Plaintiff's RFC because he did not discharge his duty to clarify an outcome-determinative ambiguity in the record.

## 2. Plaintiff's Mental Impairments

Plaintiff next argues the ALJ erred by not including Plaintiff's anxiety and depression in the RFC determination. ECF No. 14 at 10-11.  Defendant contends the ALJ properly found that Plaintiff did not have medically determinable mental impairments due to the lack of supporting objective evidence from an acceptable medical source. ECF No. 19 at 11-13. Since the ALJ concluded that Plaintiff's anxiety and depression were not medically determinable impairments, he would not be required to consider them when formulating the RFC. Therefore, the issue before the Court is whether the ALJ properly concluded that Plaintiff's anxiety and depression were not medically determinable impairments.

For allegations of a mental disorder to be a medically determinable impairment, the medical evidence must "substantiate the presence of a mental disorder" with corresponding functional limitations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. To satisfy the functional limitation requirement, the medical evidence must show limitation in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E.

At first glance, Plaintiff's medical records show a large presence of anxiety and depression as they are listed as "active problems" in nearly every medical report from North County Health Services ("NCHS"). *See* AR at 691, 696, 702, 708, 716, 722, 727, 732. However, they were not treated as such. Plaintiff's anxiety and depression were seemingly never discussed at the NCHS visits, and the medical records do not provide

3:22-cv-0714-JES-SBC

any evidence that Plaintiff was experiencing symptoms or functional limitations related to anxiety or depression. *See id*. at 691, 696, 703, 709, 716, 722, 728, 732, 737, 744, 753, 761, 766, 772, 777, 783, 790, 794.

Instead, the medical records show that Plaintiff's NCHS visits were due to other health concerns such as dizziness, diabetes, nausea, asthma, and shortness of breath. *See* AR at 689, 722, 731, 803, 828, 855, 873, 889, 900, 1003, 1006, 1052. The long list of "active problems," contained in each medical report seemed to regenerate each time Plaintiff went to NCHS as the list largely remained unchanged from visit to visit. A closer look at the records shows that "active problems" were not addressed unless they were considered a "chief complaint" for the visit. *See id*. Importantly, Plaintiff's anxiety and depression were completely ignored besides their inclusion on the "active problems" list. *See id*. Therefore, the medical records indicate that Plaintiff was not experiencing any corresponding functional limitations.

Additionally, Plaintiff has not testified to any functional limitations relating to anxiety or depression. In support of his argument, Plaintiff merely states that he grew up with depression and mental illness, and that he is being treated by doctors and taking medication. ECF No. 14 at 11. Plaintiff's self-reported limitations are not sufficient to sustain a finding of a medically determinable impairment. Plaintiff does not allege "problems with memory, understanding, following instructions, getting along with others, completing tasks, concentrating, or handling stress and changes in routine." AR at 19.

Based on the record, the Court finds that Plaintiff's anxiety and depression are not medically determinable impairments because there is no evidence that Plaintiff experienced corresponding functional limitations. Therefore, the ALJ's exclusion of the impairments in Plaintiff's RFC is supported by substantial evidence.

### 3. Plaintiff's Obesity

The Court notes that Plaintiff did not list obesity as an alleged impairment when applying for disability benefits, and Plaintiff has not expressed any functional limitations related to obesity. AR at 19, 59. However, Plaintiff argues the ALJ erred by failing to

address the effects of Plaintiff's obesity in his RFC determination. ECF No. 14 at 11-12. Defendant maintains that the ALJ acknowledged Plaintiff's obesity and adequately considered the impact of the impairment when determining Plaintiff's RFC. ECF No. 19 at 13-14.

When determining the RFC for an obese claimant, an ALJ must explicitly consider whether the claimant's obesity limited the claimant physically or mentally. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (citing SSR 02-1p, 2002 WL 34686281 at *7). In *Burch*, the Court found that the ALJ properly incorporated the claimant's obesity into the RFC determination by acknowledging physicians' notes that the claimant was "somewhat obese," and by recognizing possible effects of obesity on claimant's back. *See Burch v. Barnhart*, 400 F.3d at 684 (9th Cir. 2005).

Here, the ALJ explicitly considered obesity in Plaintiff's RFC. First, the ALJ acknowledged Plaintiff's BMI of 40 and 42.9, and found that Plaintiff's obesity was a "severe" impairment at step two. AR at 18, 21. Second, the ALJ considered two medical consultants' opinions, and found the opinion who considered Plaintiff's "severe morbid obesity," more persuasive. *See id*. at 21. Accordingly, the ALJ primarily relied on Dr. Dupont's more restrictive opinion that Plaintiff should "never" climb ladders, ropes, or scaffolds, and included the limitations in Plaintiff's RFC. *See id*. at 19, 21, 69, 71.

Therefore, the Court finds the ALJ adequately considered obesity in Plaintiff's RFC determination because the ALJ treated the impairment as "severe," and relied on the medical consultant's report that accounted for Plaintiff's obesity.

### 4. Plaintiff's Migraines

Like Plaintiff's obesity, the Court notes that Plaintiff did not list migraines or headaches as an alleged impairment when applying for disability benefits. AR at 59. Plaintiff argues, however, that the ALJ erred by failing to address whether Plaintiff's alleged migraines met Listing section 11.02, paragraph B. ECF No. 14 at 13-14.

There is no Social Security listing for migraines. Social Security Ruling ("SSR") 19-4p provides that "Epilepsy (listing 11.02) is the most closely analogous listed

impairment for a medically determinable impairment ("MDI") of a primary headache disorder." SSR 19-4p, 2019 WL 4169635, at *7. The relevant listing states:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id*.

Plaintiff has the burden to prove that he has a medical condition that meets or equals a listing, *i.e.*, a condition that is so severe it is *per se* disabling. *See* 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (claimant bears the burden of proving an impairment that meets or equals the criteria of an impairment listed in the Commissioner's regulations); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985) (mere diagnosis of an impairment found in one of the listings is not enough to sustain a finding of disability, instead, all the findings shown in the listing must also be present).

Here, Plaintiff fails to meet his burden of establishing a medical condition. In support of his argument, Plaintiff simply states that he "suffers from migraines with aura," and that his migraines are "noted throughout his medical record." ECF No. 14 at 14. While Plaintiff's migraines are noted and defined as an "active problem" throughout the medical records, they were not treated as such. *See* AR at 691, 696, 703, 709, 716,

722, 728, 732, 737, 744, 753, 761, 766, 772, 777, 783, 790, 794. The cited medical records either fail to make any reference to active complaints of headaches, or Plaintiff reported that he was not experiencing headaches. *See id.* at 983, 987, 991, 1000, 1007, 1012, 1044, 1050, 1055, 1059, 1063, 1069, 1091, 1133. Plaintiff often sought medical treatment, but not for migraines or headaches. *See id.* As discussed above, a list of "active problems" seemed to regenerate every time Plaintiff visited NCHS. Therefore, the alleged migraines being defined as an "active problem" is not persuasive. The record does not show that Plaintiff ever expressed discomfort or symptoms from migraines.

Accordingly, the Court finds that the ALJ did not err in failing to address Plaintiff's migraines in the RFC determination. Next, the Court examines whether the ALJ erred in evaluating Plaintiff's subjective statements.

**B.  Whether the ALJ Failed to Properly Evaluate Plaintiff's Subjective Statements**

An ALJ assesses a claimant's subjective statements regarding his or her symptoms and limitations in two parts. CFR §§ 404.1529(a), 416.929(a). First, an ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Ragudo v. Saul*, 411 F. Supp. 3d 1125, 1133-34 (S.D. Cal. 2019) (citing *Smolen*, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ "determine[s] credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must

identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *Burrell v. Colvin*, 775 F. 3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's testimony about the intensity of her . . . symptoms").

In assessing a claimant's statements about his or her symptoms, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (listing factors) (citation omitted).

While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain . . . it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Social Security Ruling ("SSR") 16-3p (S.S.A. Oct. 25, 2017) (SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").[6]

---

[6] SSR 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy" to "clarify that subjective symptom evaluation is not

1                    **1.  Plaintiff's Subjective Statements**

2        At the hearing, the ALJ asked Plaintiff about his health conditions during the

3 relevant period, May 20, 2017, the alleged onset date, through September 30, 2017. AR at

4 30-43. Plaintiff testified that, as of September 30, 2017, he weighed approximately 300

5 pounds, had type II diabetes, high blood pressure, an umbilical hernia, coronary artery

6 disease, asthma, and foot issues. *Id*.)

7        Regarding the coronary artery disease, Plaintiff said he suffered a couple of mild

8 heart attacks, one in approximately June 2017, and a cardiologist eventually put a stent in

9 his heart. AR at 35.

10        When the ALJ asked if Plaintiff had problems with his lower extremities, Plaintiff

11 stated that it was starting to get painful to move around and walk in 2017. AR at 36.

12 Plaintiff testified that he was able to walk his dog around the block, but he could not walk

13 more than that without taking a break. *Id*. at 37-39. Plaintiff further explained that he had

14 to elevate his legs "at all times," or the swelling would get so bad that he could not move.

15 *Id*. at 38. Plaintiff testified that he could no longer sit in a regular seated position because

16 he needed to have his legs up and elevated. *Id*. Additionally, Plaintiff stated that his

17 doctor advised him to elevate his legs for 20 to 30 minutes for every hour he was on his

18 feet. *Id*. He stated that he was more comfortable walking than standing in one spot, even

19 though it was painful. *Id*. Lastly, Plaintiff said his "good days" were when he experienced

20 no pain, and on "bad days," he was in so much pain that he could not get out of bed. *Id*. at

21 39.

22 / / / /

23 / / / /

24 / / / /

25

26 _____

27 an examination of an individual's [overall character or truthfulness] . . . [and] more
closely follow [SSA] regulatory language regarding symptom evaluation." *See* SSR 16-

28 3p, 2017 WL 5180304, at 1-2, 10-11.

### 2.  The ALJ's Analysis of Plaintiff's Subjective Statements

The ALJ found that the record established medically determinable impairments that could reasonably be expected to cause Plaintiff's alleged symptoms, but he concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully supported by the record. AR at 20.

This finding meets the threshold with respect to part one. Next, because there was no finding that Plaintiff was malingering, the ALJ was required to make specific findings stating clear and convincing reasons for discounting Plaintiff's subjective statements. The Court examines the ALJ's explanations for discounting Plaintiff's statements in dispute, *i.e.*, his cardiac condition, and leg condition, and the medical evidence that Plaintiff purports is "inconsistent" with the statements.

### a.   Cardiac Stent Placement

Plaintiff argues that the ALJ did not provide clear and convincing reasons to discount his statements regarding his cardiac condition because stent placement is ". . . proper evidence of a cardiac condition in 2017." ECF No. 14 at 15-16. The ALJ countered that Plaintiff's statements regarding alleged heart attacks, including one in approximately June 2017 with stent placement, were not entirely consistent with the medical records. AR at 20.

In his decision, the ALJ found that Plaintiff's coronary artery disease, which was diagnosed in May 2016, was a severe impairment during the relevant period. AR at 18, 21. However, the ALJ determined that the severe impairment was not a disabling functional limitation. *Id.* at 22-23. The ALJ noted that in June 2017, Plaintiff went to the emergency room two days in a row because he was experiencing vomiting, diarrhea, and abdominal pain that prevented Plaintiff from taking his medication, which resulted in headache, hypertension, and hyperglycemia. *Id.* at 21, 429-444. An electrocardiogram ("ECG") and computed tomography ("CT") scan showed duodenitis, and no evidence of a heart attack or stent placement. *See id.*

Plaintiff went to the emergency room again in August 2017 with complaints of body aches, chills, productive cough, and asthma exacerbation. AR at 21, 301. Plaintiff's symptoms improved with intravenous steroids and albuterol inhalers. *Id*. at 21-22. During the emergency room visit, Plaintiff was seen for a cardiology consultation with Dr. David A. Spiegel, who noted coronary disease and Plaintiff's noncompliance with taking prescribed medications. *Id*. at 22, 309. Dr. Spiegel stated that Plaintiff may have cardiac asthma, but the prognosis is ". . . poor as he continues to be profoundly noncompliant and self-neglecting." *Id*. Plaintiff eventually left the emergency room against medical advice, which warned of risks including diabetes ketoacidosis, asthma exacerbation, hypoxia, heart attack, and even death. *Id*. at 301.

Plaintiff does not argue that the ALJ's characterization of these visits to the emergency room were incorrect. Plaintiff also does not argue that he was more functionally limited than what the ALJ determined in the RFC determination. Plaintiff's sole argument is that the ALJ erred because a 2019 stent placement is proper evidence of a cardiac condition in 2017. Without more, Plaintiff fails to meet his evidentiary burden on the matter. The ALJ accounted for Plaintiff's coronary artery disease as a severe impairment and included medical records relevant to the impairment in his decision. The ALJ clearly does not dispute the fact that Plaintiff had a cardiac condition in 2017. Instead, the ALJ disputes Plaintiff's statements of alleged heart attacks and stent placement in 2017, finding that Plaintiff's claims are not supported by the medical records. As such, the ALJ provides clear and convincing evidence for discounting Plaintiff's subjective statements.

### b. Leg Condition

Lastly, Plaintiff argues the ALJ did not provide clear and convincing reasons to discount his statements regarding his leg condition because photographs from 2017, 2019 and 2020, in the administrative record purportedly undermine the ALJ's assessment. ECF No. 14 at 15-16. The ALJ stated that Plaintiff's statements were inconsistent with the

medical records because they did not show any medical necessity for leg elevation during the relevant period. AR at 20.

The Court disagrees with Plaintiff's assertions here. Plaintiff simply cites to photographs showing ulcers, and swollen legs and feet, to argue that the ALJ erred in discounting his statements about the condition of his legs. The ALJ did not dispute the appearance of Plaintiff's legs or feet. The ALJ's decision noted lower extremity edema and a skin ulcer/blister on Plaintiff's right leg in September 2017, and a diagnosis of chronic cutaneous ulcer venous statis in October 2017. AR at 22, 848, 1050, 1052-1056. Moreover, the appearance of Plaintiff's legs and feet alone does not provide any information or evidence as to Plaintiff's disabling functional limitations or a medical necessity to elevate his feet.

For these reasons, Plaintiff does not establish error as the photographs are not relevant to the issue of whether the ALJ improperly discounted Plaintiff's statements. The Court declines to entertain this argument further.

## VI.  CONCLUSION

The last question for the Court is whether to remand for further administrative proceedings or for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). A remand for an immediate award of benefits is appropriate only in rare circumstances. *Leon v. Berryhill*, 874 F.3d 1130 (9th Cir. 2017). The Court concludes that "[t]he rare circumstances that result in a direct award of benefits are not present in this case." *Id*.

Instead, the Court finds that further administrative proceedings would serve a meaningful purpose because the record can be developed as to outcome-determinative ambiguity. On remand, the ALJ must conduct an appropriate inquiry with respect to Plaintiff's medical necessity for periodic leg elevation as outlined above. Based on the

foregoing reasons, the Court **VACATES** the ALJ's decision and **REMANDS** this case for further administrative proceedings consistent with the findings presented herein.

   **IT IS SO ORDERED.**

Dated:  September 21, 2023

Honorable James E. Simmons, Jr.
Unites States District Judge

3:22-cv-0714-JES-SBC